IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

APPEAL NO.  15-1444

_____

RENEE L. McCRAY

*Plaintiff/Appellant*

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al.*

*Defendants/Appellees*

_____

On Appeal from United States District Court
for the District of Maryland
Case No. 1:13-cv-01518 GLR
_____

APPELLEES' JOINT RESPONSE BRIEF

Michael S. Barranco
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland  21204
Tel: (410) 494-7777
Fax: (410) 494-1658
msbarranco@tph-law.com

Attorneys for Appellees,
Wells Fargo Bank, N.A. and Federal Home
Loan Mortgage Corporation

Robert H. Hillman
Samuel I. White, PC
611 Rockville Pike Suite 100
Rockville Maryland 20852-1178
Tel: (301)804-3385
Fax: (301)838)-1954
rhillman@siwpc.com

Attorneys for Appellees,
Samuel I. White P.C. and the individually
named Substitute Trustees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>15-1444</u>       Caption: <u>Renee L. McCray v. Federal Home Loan Mortgage Corporation, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Federal Home Loan Mortgage Corporation (Freddie Mac)</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
      However, see attached investor FAQ.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                              ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Michael S. Barranco (#04036)          Date: _____January 4, 2016_____

Counsel for: Federal Home Loan Mortgage Corp.

## CERTIFICATE OF SERVICE
*************************

I certify that on _____January 4, 2016_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Renee L. McCray
109 Edgewood Street
Baltimore, MD 21229

Robert H. Hillman, Esq.
Samuel I. White, PC
611 Rockville Pike, Suite 100
Rockville, MD 20850

/s/ Michael S. Barranco (#04036)
_____(signature)_____

_____January 4, 2016_____
(date)

Appeal: 15-1444      Doc: 26      Filed: 01/04/2016      Pg: 4 of 71

# Investor FAQ

1. What is the corporation's legal name?
2. When was Freddie Mac incorporated?
3. Where is Freddie Mac located?
4. When did Freddie Mac first become a public company?
5. On which exchange is Freddie Mac common stock traded? What is the ticker symbol?
6. Is Freddie Mac a government agency?
7. Who regulates Freddie Mac?
8. How does Freddie Mac differ from Fannie Mae and Ginnie Mae?
9. What are Freddie Mac's principal businesses?
10. Does Freddie Mac file quarterly and annual reports with the SEC?
11. Who is Freddie Mac's auditor?
12. Does Freddie Mac pay dividends?
13. Who do I contact regarding change of address or lost stock certificates?
14. When has Freddie Mac's common stock split?
15. How do I contact Freddie Mac's Investor Relations?

1. **What is the corporation's legal name?**

   Under Freddie Mac's Congressional charter, the corporation's official name is Federal Home Loan Mortgage Corporation. However, the Board of Directors has authorized the corporation to conduct business as Freddie Mac.

2. **When was Freddie Mac incorporated?**

   Freddie Mac is a federally chartered corporation created by Congress on July 24, 1970.

3. **Where is Freddie Mac located?**

   The company's corporate headquarters is located in McLean, VA. Freddie Mac also operates five regional offices in Atlanta, Chicago, Dallas, Los Angeles and New York.

4. **When did Freddie Mac first become a public company?**

   On January 3, 1989, Freddie Mac stock was converted into a class of stock that could be owned and traded by all investors. (Prior to that date, ownership of the stock was limited by its terms to financial institutions and a small number of other parties.) On August 9, 1989, Congress amended Freddie Mac's charter to convert this class of stock into Voting Common Stock, granting its holders the right to elect 13 directors of the Company. The Voting Common Stock and its predecessors were listed on the New York Stock Exchange from 1984 through July 7, 2010, and began trading exclusively on the over-the-counter (OTC) market since July 8, 2010.

5. **On which exchange is Freddie Mac common stock traded? What is the ticker symbol?**

   Beginning on July 8, 2010, Freddie Mac common stock is exclusively traded on the OTC market.

   The ticker symbol is FMCC.

6. **Is Freddie Mac a government agency?**

   No. Freddie Mac was chartered by Congress as a private company serving a public purpose. On September 6, 2008, the Director of the Federal Housing Finance Agency (FHFA), appointed FHFA as conservator of Freddie Mac. As conservator, FHFA has all rights, titles, powers, and privileges of Freddie Mac, and of any stockholder, officer, or director of Freddie Mac with respect to Freddie Mac and its assets; and title to the books, records and assets of Freddie Mac. In connection with the appointment of FHFA as conservator, Freddie Mac and the U.S. Department of the Treasury have entered into a Senior Preferred Stock Purchase Agreement. As part of the agreement, Freddie

Mac has issued senior preferred stock to Treasury, together with a warrant for the purchase of common stock representing 79.9% of Freddie Mac's common stock.

### 7. Who regulates Freddie Mac?

Freddie Mac's regulator is the Federal Housing Finance Agency    (FHFA).  FHFA was established in 2008 as an independent government agency responsible for oversight of the operations of Freddie Mac, Fannie Mae and the Federal Home Loan Banks. In addition, the U.S. Department of Housing and Urban Development has fair housing authority over Freddie Mac.

### 8. How does Freddie Mac differ from Fannie Mae and Ginnie Mae?

Freddie Mac and Fannie Mae have substantially similar charters, Congressional mandates, and regulatory structures. Both Freddie Mac and Fannie Mae are publicly traded corporations. Ginnie Mae is a government-owned corporation within the U.S. Department of Housing and Urban Development that guarantees mortgage-backed securities backed by federally insured or guaranteed loans. Unlike Freddie Mac and Fannie Mae, Ginnie Mae does not purchase mortgages from lenders, nor does it buy, sell, or issue securities.

### 9. What are Freddie Mac's principal businesses?

Freddie Mac supports liquidity and stability in the secondary mortgage market through two principal lines of business. Our credit guarantee business purchases residential mortgages and mortgage-related securities in the secondary mortgage market, securitizes these mortgages and subsequently sells them to investors as mortgage-backed securities. We also have a portfolio investment business that purchases mortgages for our mortgage-related investments portfolio.

### 10. Does Freddie Mac file quarterly and annual reports with the SEC?

On July 18, 2008, Freddie Mac registered its common stock with the Securities and Exchange Commission (SEC) under the Securities Exchange Act of 1934. Freddie Mac files its period financial disclosure documents with the SEC via the SEC's Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system.

Prior to Freddie Mac's voluntary registration of its common stock with the SEC on July 18, 2008, Freddie Mac did not file financial reports with the SEC and instead prepared Annual Information Statements and Quarterly Information Statement Supplements in lieu of Forms 10-K and 10-Q, respectively, which are available from the company's Investor Relations Department or on-line at Freddie Mac's website.

### 11. Who is Freddie Mac's auditor?

PricewaterhouseCoopers LLP (PwC) has been our auditor since March 6, 2002.

### 12. Does Freddie Mac pay dividends?

As announced by FHFA Director, James Lockhart, on September 7, 2008, all future common and preferred stock dividends would be eliminated, other than dividends on the senior preferred stock issued to the U.S. Department of the Treasury. Historical dividends can be found in the Summary of Dividends [PDF].

### 13. Who do I contact regarding change of address or lost stock certificates?

Inquiries concerning change of address, account status and lost stock certificates should be directed to Freddie Mac's transfer agent:

Computershare Trust Company, N.A.
Re:  Freddie Mac
P.O. Box 43081
Providence, RI  02940-3081
(781) 575-2879


Web Site:  www.computershare.com

### 14. When has Freddie Mac's common stock split?

Freddie Mac has had two common stock splits. The Board of Directors authorized a 3-for-1 stock split effective April 9, 1992 and a 4-for-1 stock split effective January 13, 1997.

15. **How do I contact Freddie Mac's Investor Relations?**

If you are a **shareholder** and you have questions regarding Freddie Mac, please contact our Investor Relations group at (571) 382-4732, by email at shareholder@freddiemac.com, or by mail at 1551 Park Run Drive, MS D5F, McLean, VA 22102-3110.

If you are an investor in Freddie Mac **debt products** and you have questions regarding Freddie Mac, please contact our Debt Investor Relations group at (571) 382-3700 or (888) 882-6275, by email at debt_securities@freddiemac.com, or by mail at 1551 Park Run Drive, MS D40, McLean, VA 22102-3110.

If you are an investor in Freddie Mac **mortgage-backed securities** and you have questions regarding Freddie Mac, please call (800) 336-3672 or email investor_inquiry@freddiemac.com.

© 2016 Freddie Mac

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1444__      Caption: __Renee L. McCray v. Federal Home Loan Mortgage Corporation__

Pursuant to FRAP 26.1 and Local Rule 26.1,

Wells Fargo Bank, N.A.
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.     Does party/amicus have any parent corporations?                          ☑YES ☐NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
       Wells Fargo & Company

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                   ☑YES ☐NO
       If yes, identify all such owners:
       Wells Fargo & Company

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Michael S. Barranco (#04036)    Date: January 4, 2016

Counsel for: Appellee, Wells Fargo Bank, N.A.

## CERTIFICATE OF SERVICE
**************************

I certify that on _January 4, 2016_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Renee L. McCray
109 Edgewood Street
Baltimore, Maryland 21229

Robert H. Hillman, Esq.
Samuel I. White, PC
611 Rockville Pike, Suite 100
Rockville, MD 20850

/s/ Michael S. Barranco (#04036)        January 4, 2016
        (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>15-1444</u>        Caption: <u>RENEE L. McCRAY v FEDERAL HOME LOAN MORTGAGE CORP</u>.

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Sameul I White PC,</u>
(name of party/amicus)

who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                     ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/Robert H. Hillman                         Date:        1-04-2016

Counsel for: Samuel I. White P.C.

## CERTIFICATE OF SERVICE
**************************

I certify that on        1-04-2016        the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Kenzie M. Rakes                          Michael S. Barranco
Meynardie & Nanney, PLLC                 Treanor Pope & Hughes, P.A.
2840 Plaza Place, Suite 360              500 York Road
Raleigh, NC 27612                        Towson, Maryland  21204
Counsel for Appellant Renee L. McCray    Counsel for Appellees Wells Fargo Bank NA
                                         and Federal Home Loan Mortgage Corproation

/s/Robert H. Hillman                                    01-04-20016
        (signature)                                        (date)

- 2 -

# Table of Contents

<u>Page</u>

STATEMENT OF THE ISSUES ................................................................1

SUPPLEMENTAL STATEMENT OF THE CASE ................................1

SUMMARY OF THE ARGUMENTS ....................................................4

ARGUMENT .........................................................................................6

    I.    THE SIWPC APPELLEES .....................................................6

        A.    Standard of Review .....................................................6

        B.    The District Court Considered The Applicable Law And Correctly Applied It To The Facts As Pled, Concluding That The Complaint Failed To State A Claim Under FDCPA As To The SIWPC Appellees .........................7

                1.    The Claims Asserted Against the SIWPC Appellees ..........8

                2.    Plausibility Of The Claim ....................................9

                3.    The SIWPC Appellees Are Not Debt Collectors ...............11

                4.    The Alleged Violations Of The FDCPA Were Not Material And Are Thus Not Actionable ...........................21

    II.    THE FREDDIE MAC AND WELLS FARGO APPELLEES................27

        A.    The District Court Committed No Error Dismissing McCray's 15 U.S.C. §1641(g) Claim Asserted Against Freddie Mac .........................................................27

        B.    The District Court Committed No Error Dismissing McCray's 15 U.S.C. §1641(g) Claim Asserted Against Wells Fargo .........................................................34

CONCLUSION ...................................................................................36

i

# Table of Authorities

Page

## Cases

*Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550 (4th Cir. 2011) ........................... 33

*Almy v. Sebelius*, 749 F.Supp.2d 315 (D.Md. 2010)................................... 17

*American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212 (4th Cir. 2004)............ 31

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ......... 10, 11, 13, 21, 22

*Barr v. Flagstaff*, 2014 WL 4660799 (D. Md. Sept. 17, 2014) ................................... 35

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) 9, 10, 21

*Blagogee v. Equity Trustees, LLC*,  2010 WL 2933963 (E.D.Va. July. 26, 2010) . 9, 13, 15, 18, 20

*Blick v. Wells Fargo Bank, N.A.,* 2012 WL 1030137 (W.D.Va. Mar. 27, 2012) ........................ 17

*Bolourz v. Bank of America*, *NA.*, 2010 WL 3385177 (E.D. Va. Aug. 24, 2010) ....................... 14

*Bradford v. HSBC Mortgage Corp.*, 829 F.Supp.2d 340 (E.D. Va. 2011)................................. 29

*Connell v. Citimortgage, Inc*., 2012 WL 5511087 (S.D. Ala. Nov. 13, 2012) ............................ 35

*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F2d 42 (2d Cir. 1991) .................................. 31

*Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618 (4th Cir. 2008)................................ 31

*Craig v. Bank of New York Mellon Corporation*, 2014 WL 1347225 (E.D.N.Y. Mar. 31, 2014)................................................................................................................................. 29

*Deutche Bank National Trust Company v. Brock*, 430 Md. 714, 63 A.3d 40 (2013)................. 35

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010)................................................. 24

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999)...................................................... 6

*F.D.I.C. v. Cashion*, 720 F.3d 169 (4th Cir. 2013) ..................................................................... 33

*F.D.I.C. v. Prince George Corp*., 58 F3d 1041 (4th Cir. 1995) ................................................ 19

*Frietsch v. Refco Inc*., 56 F. 3d. 825 (7th Cir. 1995) ............................................................... 17

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ................................................................. 6

*Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013) .............................................. 20

*Gray v. Four Oak Court Ass'n Inc.,* 580 F. Supp. 2d 883 (D. Minn. 2008) ................................. 14

*Hahn v. Triumph P'shtps LLC,* 557 F.3d 755 (7th Cir. 2009) .................................................. 24, 25

*Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)................................. 16

*Helvering v. Gowran,* 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937) ...................................... 11

*Horvath v. Bank of New York*, 2010 WL 538039 (E.D. Va. Jan. 29, 2010) ................................. 14

*Hulse v. Ocwen Fed Bank,* 195 F. Supp.2d 1188 (D.Or. 2002)................................................... 18

*Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253 (4th Cir. 1998)........... 30

*Maddox v. Wells Fargo Bank, N.A.*, 2015 WL 4069464 (D. Md. July 2, 2015) ......................... 35

*Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009)...................................... 24, 26

*Moore v. Commonwealth Trustees, LLC*, 2010 WL 4272984 (E.D.Va. Oct. 25, 2010).............. 14

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009).................... 6

*Ngatia v. Department of Public Safety & Correctional Services*, 2015 WL 996585 (D. Md. Mar. 4, 2015) ................................................................................................................ 30

*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007) .................................................... 6

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396 (4th Cir. 1998)........................................ 17

*Perkins v. United States*, 55 F.3d 910 (4th Cir. 1995) ................................................................. 33

*Perpetual Bldg. & Loan Ass'n of Anderson v. Braun,* 270 S.C. 338, 242 S.E.2d 407 (1978) ...................................................................................................................................... 19

*Piper v. Portnoff Law Assocs. Ltd.*, 396 F3d. 227 (3d Cir 2005) .................................................. 19

*Potter v. Potter* 199 F.R.D. 550 (D. Md. 2001) ............................................................................. 4

*Robinson v. Wix Filtration Corp LLC*, 599 F.3d. 403 (4th Cir. 2010) .......................................... 12

*Rosado v. Taylor,* 324 F. Supp.2d 917 (N.D.Ind. 2004).............................................................. 18

*Ruggia v. Washington Mutual*, 719 F.Supp.2d 642 (E.D.Va. 2010) ............................................ 14

*Simard v. White*, 383 Md. 257, 859 A2d. 168 (2004).................................................................. 19

*Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992) .............................................. 22

*Starosta v. MBNA America Bank, NA.*, 244 Fed. Appx. 939, 2007 WL 2007944 (11th Cir. 2007)..................................................................................................... 26

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).................... 10

*Talaie v. Wells Fargo Bank, N.A.*, ---F.3d ---, 2015 WL 8606014 (9th. Cir. Dec. 14, 2015)....... 29

*Terry v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 1832376 (D. Md. April 30, 2013) ......................................................................................... 35

*Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001)..................................................... 6

*United States v. National Financial Services, Inc.*, 98 F.3d 131 (4th Cir.1996) ......................... 23

*Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643 (7th Cir. 2009)............................................ 26

*Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 2009 WL 2477764 (11th Cir. Aug. 14, 2009)............................................................................... 14

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) ..................................................... 31

*Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006)................ 9, 12, 13, 15, 17

*Zinkand v. Brown*, 478 F.3d 634 (4th Cir.2007)....................................................... 13

## Statutes

12 U.S.C. §2601.............................................................................................. 2

15 U.S.C. §1640.............................................................................................. 28

15 U.S.C. §1641............................................................................ 1, 2, 5, 27, 29, 34, 35

15 U.S.C. §1692........................................................................ 2, 7, 14, 16, 21, 23, 24, 25

## Rules

Fed. R. Civ. P. 56.......................................................................................... 33

Fed. R. Civ. P. Rule 59 ................................................................................ 13, 17

Fed.R.Civ.P. 8 ............................................................................................... 10

Md. Rule of Civ. Proc. 14-305............................................................................ 20

**Miscellaneous**

*Helping Families Save Their Home Act of 2009,* Pub. L. No. 111-22, 123 Stat. 1632 ............... 28

Richard M. Venable, *The Law of Real Property and Leasehold Estates in Maryland* 177
    (1892) ...................................................................................................................... 19

## STATEMENT OF THE ISSUES

1.      Did the District Court err in dismissing the Fair Debt Collection Act claim asserted under 15 U.S.C. §§ 1692a, 1692e, 1692f and 1692g against the Substitute Trustees named in the State foreclosure proceeding and their counsel, the Law Offices of Samuel I White P.C.?

2.      Did the District Court err in dismissing the TILA claim asserted under 15 U.S.C. §1641(g) against Freddie Mac when McCray filed her lawsuit more than a year after she knew of Freddie Mac's involvement in her loan?

3.      Did the District Court err in dismissing the TILA claim asserted under 15 U.S.C. §1641(g) against Wells Fargo after finding that the July 3, 2012 assignment of the Deed of Trust did not implicate the statute, and when McCray knew Wells Fargo was the servicer of her loan since at least June of 2011?

## SUPPLEMENTAL STATEMENT OF THE CASE

On May 23, 2013, Appellant Renee L. McCray ("McCray") filed her Complaint against Federal Home Loan Mortgage Corporation ("Freddie Mac"), Wells Fargo Bank, N.A. ("Wells Fargo"), Samuel I. White P.C. ("SIWPC") and the Substitute Trustees (the "Substitute Trustees")[1] who were the Plaintiffs in a foreclosure action pending in the Circuit Court for Baltimore City, Maryland, Civil

---

[1] SIWPC and the Substitute Trustees are collectively referred to herein as "SIWPC" or "SIWPC Appellees."

1

Action Case No. 24013000528 ("Foreclosure Action"). J.A. 3, 16-63, and 121-124. McCray filed an Amended Complaint on June 13, 2013 before any defendant had responded to her Complaint. J.A. 4 and 64-80. The Amended Complaint asserted violations of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §1692 *et seq.*, the Truth in Lending Act ("TILA") 15 U.S.C. §1641(g), the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. §2601, *et seq.*, as well as Maryland consumer protection violations which McCray later abandoned. On July 1, 2013, Freddie Mac and Wells Fargo filed a motion to dismiss all claims in the Amended Complaint. J.A. 4-5, 81 and Doc. 8. The motion by Freddie Mac and Wells Fargo was presented in the alternative as a motion for summary judgment and exhibits were attached to the motion. J.A. 81-116 and Doc 8-1. SIWPC and the Substitute Trustees also timely filed a motion to dismiss the Amended Complaint. J.A. 5, 117-119 and Doc. 13. McCray filed oppositions to the motions which included presentation of affidavits and other documents to support her oppositions. J.A. 6, 189- 212. While the motions were pending McCray filed a motion for leave to file a Second Amended Complaint. J.A. 219.

On January 24, 2014, Judge George L. Russell, III entered his Memorandum Opinion and Order dismissing all claims asserted under Count I – Violations of the FDCPA and Count II – Violations of TILA. J.A. 273-308. At that time, Judge Russell also granted in part, but denied in part, Wells Fargo's motion to dismiss

2

Count III – Violation of RESPA.  The surviving RESPA claim was limited to the actual damages, if any, McCray could prove she incurred as a result of Wells Fargo's alleged noncompliance with the response times of RESPA.

McCray filed a Motion to Alter or Amend Judgment, and filed a Notice of Interlocutory Appeal.  J.A. 10 and Doc. 46.  Judge Russell denied McCray's Motion to Alter or Amend Judgment.  J.A. 11, 316-318 and Doc. 59.  McCray later dismissed her Interlocutory Appeal.

The District Court issued a scheduling order and discovery proceeded.  J.A. 12 and Doc. 66.  On January 13, 2015, Wells Fargo filed its renewed Motion for Summary Judgment with respect to McCray's RESPA claim on the grounds that McCray had no evidence that she sustained actual damages as a result of any alleged violation.  J.A. 13, 319-461 and Doc. 76. McCray filed an Objection to the Motion for Summary Judgment, however, she did not address the substance of Wells Fargo's motion.  Instead, she argued that there was no evidence that her "loan exists."  See J.A. 13 and Doc. Nos. 77 and 77-1 ("Duly Sworn Affidavit of Facts") p. 3.  In a subsequent filing, McCray asserted that she need not address the issues raised in Wells Fargo's Motion for Summary Judgment because it would require her to "argue points that are no longer the thrust of this case."  (See McCray's Motion to Strike Reply of Wells Fargo, J.A. 13 and Doc. No. 79, p. 1). On March 27, 2015 Judge Russell issued a letter order granting Wells Fargo's Motion for Summary Judgment

3

because McCray had failed to establish any damages directly traceable to Wells Fargo's treatment of either her or her alleged Qualified Written Requests. J.A. 14, 462-466. Judge Russell noted that McCray had "fail[ed] to respond to the facts set forth by Wells Fargo in its Motion for Summary Judgment. Instead, McCray . . . disput[ed] the legitimacy of the promissory note and related loan." J.A. 463. McCray's appeal followed. J.A. 467. In her Brief, McCray does not take issue with the disposition of the RESPA claims.

## SUMMARY OF THE ARGUMENTS

McCray argues that the District Court erred by dismissing her Fair Debt Collection Practices Act case against SIWPC by suggesting she had plead sufficient facts to establish a plausible claim. Contrary to McCray's beliefs that she sufficiently plead a plausible cause of action against SIWPC, the District Court properly concluded that, despite special deference being given to her for pleading as a pro se litigant, she failed to sufficiently plead violations of FDCPA against the Appellees in her Second Amended Complaint. J.A. 294. Finally, the District Court properly denied McCray's Motion to Alter and Amend Judgment noting that it had no obligation to outline a "blue print" for McCray to use in "engineering" her argument for reconsideration. J.A. 316-318, the March 27, 2014 Memorandum Order (citing *Potter v. Potter* 199 F.R.D. 550, 553 (D. Md. 2001)).

4

With respect to McCray's TILA claims against Freddie Mac and Wells Fargo brought under 15 U.S.C. §1641(g), the District Court did not err when it dismissed these claims. McCray's claim against Freddie Mac is barred by the one year statute of limitation set forth in TILA. In opposing the motion to dismiss and motion for summary judgment filed by Freddie Mac, McCray admitted receiving a letter from Wells Fargo in October of 2011 advising her of Freddie Mac's involvement in her loan. McCray had actual notice that her claim could be dismissed based on the District Court taking notice of her admitted receipt of the October 2011 letter, or that it might be similarly disposed on motion for summary judgment and she submitted her own evidence to oppose the motions. In any event, the evidence is undisputed that McCray knew of Freddie Mac's involvement more than a year prior to filing her lawsuit, thus there was no error in disposing of the claim.

With respect to Wells Fargo, McCray now concedes that the July 3, 2012 assignment of the Deed of Trust does not implicate 15 U.S.C. §1641(g). Her complaint was devoid of any allegation of any transfer that may have been actionable, and again, she was aware of Wells Fargo's involvement as servicer of her loan, since prior to June of 2011.

For the reasons stated below, this Court should affirm the District Court's dismissal of the FDCPA claims and TILA claims.

5

# ARGUMENT

## I.    THE SIWPC APPELLEES

### A.  Standard of Review

As this Court reiterated in *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009), the standard of review of the district court's ruling on a motion to dismiss is de novo. *See, Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307 (4th Cir. 2007). "Because the district court granted Defendants' motion to dismiss, our review is de novo. Like the district court, we must assume all [well-pled facts] to be true." *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) (citations omitted). Furthermore, like the district court, this Court is to draw all reasonable inferences in favor of the plaintiff. *See*, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "[B]ut we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotations and citations omitted).

In this case, despite all benefits being given to McCray, the District Court properly dismissed her complaint and its decision should be affirmed.

**B. The District Court Considered The Applicable Law And Correctly Applied It To The Facts As Pled, Concluding That The Complaint Failed To State A Claim Under FDCPA As To The SIWPC Appellees**

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA") prohibits a 'debt collector' from using abusive or unfair means to collect a consumer debt. McCray alleges that that the SIWPC Appellees – the individually named Substitute Trustees, in their capacities as trustees and their legal counsel, the law firm of Samuel I. White P.C., violated §§ 1692e(2)(A) (falsely representing the amount or legal status of any debt) and 1692f(1) (attempting to collect any amount not authorized by any agreement), and 1692g(b) (by sending collection notices without validating the debt) of the FDCPA by filing foreclosure actions with pleadings and related documents that had the SIWPC Appellees' signatures affixed by authorized agents. McCray does not factually identify any specific documents or actions which allegedly misled her or any statements which misconstrued the named secured party or the amount of any debt.  McCray does not deny that there were prior validations of the debt by the secured party which were correct.  Nowhere in her complaints does she in any way delineate how she was misled or otherwise state how or what facts were misrepresented. She does not deny that she received the Fair Debt Notice letter dated September 28, 2012, but merely that she did not "receive" a validation of the debt from the SIWPC Appellees to her October 6, 2012 debt

dispute. Although she admits she is in default, she maintains there is no debt owed to the secured party.  For several reasons, these allegations fail to support a claim for any violation of the FDCPA as to the Appellees and the District Court agreed with the Appellees that the action was deficient.  Despite an opportunity to rectify the defect identified by SIWPC in their initial Motions to Dismiss (J.A. 5 and Doc. 13) after McCray filed her first Amended Complaint, McCray failed to do so.

For the reasons below, this Court must affirm the holding of the District Court.

**1.    The Claims Asserted Against the SIWPC Appellees**

McCray argues in her brief that the District Court erred, despite the District Court's well-reasoned Memorandum Opinions (J.A. 273-306 and 316-318) in finding that SIWPC are not debt collectors as defined by the FDCPA.  However, she acknowledged her deficient pleading by filing a Second Amended Complaint after she received the Appellees' respective Motions to Dismiss or in the alternative for Summary Judgment. However, in her Second Amended Complaint she merely restated the same conclusory assertions she had in the original and the First Amended Complaint.  Only after the District Court had dismissed her claims did she seek to assert a factual basis for her claims in her Motion to Alter and Amend Judgment.

This very issue was addressed by the District Court in its Order denying the Motion to Alter and Amend Judgment in footnote number 4 by stating:

8

One point of law should be clarified. McCray argues the Court misapplied <u>Blagogee v. Equity Trustees, LLC</u>, No. 1:10-CV-13 (GBL-IDD), 2010 WL 2933963 (E.D.Va. July. 26, 2010), by concluding that the SIWPC [Respondents] are in fact debt collectors under the FDCPA. In applying <u>Blagogee</u>, the Court did not circumvent the Fourth Circuit's stance that "a trustee's actions to foreclose on a property pursuant to a deed of trust are not 'incidental' to its fiduciary obligation," thus denying the SIWPC [Respondents] an exemption under the FDCPA. <u>Wilson v. Draper & Goldberg, P.L.L.C.</u>, 443 F.3d 373, 377 (4th Cir. 2006). *Blagogee's* application serves only to show that *McCray did not allege sufficient facts in her Complaint to establish the SIWPC Defendants as debt collectors*.

J.A. 317 n. 4 (italic emphasis added).

For the reasons stated below, McCray's allegations in each of the complaints she filed failed to support any claim for a violation of the FDCPA and the District Court recognizing the futility of McCray's arguments properly dismissed the claims. Indeed, it was clear that even after the Appellees and the District Court advised McCray of the deficiencies, she to failed to correct same.

## 2.    Plausibility Of The Claim

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Id*., 550 U.S. at 555.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court explained that the plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Instead, "[a] claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly* 550 U.S. at 556, 127 S. Ct 1955)(emphasis added). The court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

Indeed, Fed.R.Civ.P. 8(a)(2), provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Fed.R.Civ.P. 8(a)(2). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *Id.,* 534 U.S. at 513. Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.". *Twombly*, 550 U.S. at 555 n. 3, But the complaint is properly dismissed where even well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not "show[n]"—
"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2); *Iqbal,* 556 U.S.
at 679.

In this regard, despite McCray amending her complaint on two occasions, she
was unable to draft a complaint that set forth a facially plausible claim by pleading
any "factual content" that allowed the District Court the ability to draw any
reasonable inference that the named defendants, the SIWPC Appellees, were liable
for any misconduct alleged under the FDCPA. As such, the District Court was
correct in dismissing McCray's Second Amended Complaint.  *See, Helvering v.
Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937) ("[I]n the review of
judicial proceedings the rule is settled that, if the decision below is correct, it must
be affirmed, although the lower court relied upon a wrong ground or gave a wrong
reason.") (citations omitted).

### 3. The SIWPC Appellees Are Not Debt Collectors

All of the pled actions by the SIWPC Appellees occurred in connection with
the enforcement of security interests in real property, the extinguishment of
McCray's interest in the collateral, and should be excluded from application of the
FDCPA regardless. The Substitute Trustees, in seeking to foreclose solely on
security interests, that is, the borrowers equitable right of redemption, do not meet
the statutory definition of "debt collectors," were not engaged in any "debt collection

11

activity" in the context of their fiduciary performance as substitute trustees, and are required to be appointed under the loan documents and Maryland quasi-judicial proceeds rules to proceed with a foreclosure sale in Maryland, despite the erroneous reliance by McCray on this Court's decision in *Wilson v. Draper & Goldberg, P.L.L.C*., 443 F.3d 373 (4th Cir. 2006). Here, McCray failed to plead any facts indicating that the SIWPC Appellees had made any demands for payment, or that they in any way communicated deadlines and penalties for McCray's failure to make any payment, nor that the notice of default and acceleration was sent by them (it was sent by the secured party) all of which were determining factors in *Draper*. *Id*., 443 F.3d at 376. Despite the District Court (as well as the Appellees in their respective Motions to Dismiss) advising McCray of her pleading deficiencies and her filing of two (2) amended complaints, McCray's complaint was devoid of any plead facts at all which indicated any plausible action establishing a violation of the FDCPA against the SIWPC Appellees. McCray's sole assertion was the mere conclusory recital of statutory expressions that the SIWPC Appellees' principal purpose was debt collection. When she did try to assert some factual issues, it was only asserted outside the complaint in her Motion to Alter and Amend Judgment. In this regard, the District Court was proper in disregarding these contentions relative to McCray trying to bootstrap her lack of factual pleading. *See, Robinson v. Wix Filtration Corp LLC*, 599 F.3d. 403, 410 n. 9 (4th Cir. 2010) (…"requiring a district court to consider

a meritorious opposition in its manifest injustice analysis would invert the Rule 59(e) process" citing *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir.2007)). Clearly, McCray's legal conclusions, couched as factual allegations, were insufficient and the District Court did not err in not accepting McCray's barren legal allegations when it dismissed the matter. *Iqbal,* 556 U.S. at 678.

In *Blagogee v. Equity Trustees, LLC*, 2010 WL 2933963 (E.D. Va. July 26, 2010), the District Court held that a complaint alleging FDCPA violations by a mortgagor in default against a lawyer was insufficient to withstand a motion to dismiss for its failure to allege specific actions on the part of the lawyer, other than those required to enforce a security interest in his fiduciary capacity as substitute trustee appointed by a secured lender. *Id.* at *6. *Blagogee*, which was decided some four years after the *Draper* decision, distinguished earlier decisions that a substitute trustee was also not a debt collector subject to FDCPA because, under the facts of *Blagogee*, the lawyer did not focus his efforts on debt collection by "making payment demands and communicating deadlines and penalties for failure to pay." *Id* at *6 Rather, in *Blagogee*, the Trustee and its counsel  gave only those notices required under the deed of trust note and foreclosure statutes, and the allegations of the Complaint made clear that the activity complained of was a series of steps taken to exercise a foreclosure remedy as is the situation in the instant case. *Blagogee* at *4. Thus SIWPC Appellees would suggest relative to the facts McCray pled, that actions

13

taken to enforce a security interest in real property are fundamentally distinct from a debt collection activity covered under the FDCPA. *See, e.g.*, *Moore v. Commonwealth Trustees, LLC*, 2010 WL 4272984 at *4 (E.D.Va. Oct. 25, 2010) ("foreclosing on property is not a debt collection activity"); *Bolourz v. Bank of America*, *NA*., 2010 WL 3385177, at *5 (E.D. Va. Aug. 24, 2010) (citing *Warren v. Countrywide Home Loans, Inc*., 342 Fed. Appx. 458, 2009 WL 2477764 (11th Cir. Aug. 14, 2009) ("[S]everal courts have held that an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property. ... falls outside the ambit of the FDCPA.")); *Ruggia v. Washington Mutual*, 719 F.Supp.2d 642, 647-48 (E.D.Va. 2010) (citing *Horvath* and *Warren*); *Horvath v. Bank of New York*, 2010 WL 538039, at *3 (E.D. Va. Jan. 29, 2010) (citing 15 U.S.C. § 1692a(6)(F) ("[t]he term [debt collector] does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement"); *Gray v. Four Oak Court Ass'n Inc.,* 580 F. Supp. 2d 883, 888 (D. Minn. 2008) ("…if enforcement of a security interest was synonymous with debt collection, the third sentence [of 1692f(6)] would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts").

As in *Blagogee* and the other cited cases, McCray alleges violations of the FDCPA based on actions taken solely with regard to, and in furtherance of, the SIWPC Appellees' fiduciary duties as substitute trustees in enforcing security interests of collateralized real property, in the very loan agreement McCray admitted entering into (See J.A. 68, ¶11, J.A. 229 ¶14) and under the covenants she granted in the recorded deed of trust (J.A. 51 ¶ 22). There is no alleged debt collection activity by any of the SIWPC Appellees, and to suggest same would be a mischaracterization of the fiduciary duties they undertake relative to the obligations under the loan documents.

Indeed, McCray has incorrectly relied upon this Court's prior decision that held that an attorney foreclosing on a property pursuant to a deed of trust is *per se* deemed to be a "debt collector" under the FDCPA and jumps to the unsupported and factually insufficient pled conclusion that the SIWPC Appellees are debt collectors. *Draper*, 443 F.3d at 378–79. In *Draper*, this Court held that pursuant to the facts of that case, the foreclosure firm's actions were tantamount to an attempt to collect a "debt" as a result of the demands they imposed in their communications (i.e., notifying the borrower that he was in default and thereafter, providing the "amount to reinstate the above account," a balance of payments due, and instructions that any funds paid should be by cashier's check made payable to Chase but sent to the Law Firm). *Id*., 443 F.3d at 374, 378 (quoting *Heintz v. Jenkins*, 514 U.S. 291, 299, 115

15

S.Ct. 1489, 131 L.Ed.2d 395 (1995) "[T]he [FDCPA] applies to attorneys who "regularly" engage in consumer-debt-collection activity, even when that activity consists of litigation). Here, McCray did not assert any such facts and thus seeks inappropriately to suggest that any foreclosure action is, by its very nature, an attempt to collect a debt. Based upon this premise, McCray concludes, without any factual predicate, that the SIWPC Appellees are not excluded from the definition of "debt collector" under 15 U.S.C. § 1692a(6)(F)(i) merely because they were acting as trustees foreclosing on a property pursuant to a deed of trust. This is an erroneous conclusion.

McCray only sought to bootstrap herself into a §1692g(b) violation by contending in her ancillary Motion to Alter and Amend Judgment that the SIWPC Appellees admitted being a debt collector in the notices it sent her. In an exhibit attached to her ancillary motion, McCray suggests that the use of the phrase, "This is an attempt to collect a debt," is sufficient to establish that SIWPC Appellees are debt collectors collecting a debt from a consumer under §1692a and a generic assertion that the SIWPC Appellees regularly collect debt. *See,* J.A. 230 ¶ 30. These were the only factual basis for McCray's conclusion that the SIWPC Appellees were acting as debt collectors. In this regard, the District Court properly concluded that this phrase alone was insufficient to establish such a conclusion. See J.A. 317. This conclusion by the District Court has been routinely followed in this Circuit since

16

*Draper*, however, some courts have found that trustees foreclosing on properties pursuant to deeds of trust did not act as "debt collectors" under the FDCPA, notwithstanding the Fourth Circuit's holding. *See, e.g.*, *Blick v. Wells Fargo Bank, N.A.,* 2012 WL 1030137, at *8 (W.D.Va. Mar. 27, 2012). Thereafter, McCray invited the District Court to re-examine the underlying Motions to Dismiss relative to the very information that the District Court told McCray she needed when it issued the original Memorandum Opinion of January 24, 2014 (J.A. 294) and the District Court "declined the invitation." J.A. 318. The District Court went on to validate its rationale properly by stating that McCray knew what she had to do and should have asserted same in her opposition to the SIWPC Appellees' Motion to Dismiss and not as an after-the-fact assertion in the ancillary motion for reconsideration she filed. J.A. 318 (citing *Frietsch v. Refco Inc*., 56 F. 3d. 825, 828 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him."); *see also*, *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (noting that motions for consideration may not "be used to argue a case under a novel legal theory that the party had the ability to address in the first instance."). Ancillary motions are an improper means to make arguments that should have been made in opposition to the Motion to Dismiss. *See, Almy v. Sebelius*, 749 F.Supp.2d 315, 337–38 (D.Md. 2010) (explaining that motions for reconsideration under FRCP Rule 59(e) are not

occasions to make arguments that were available and should have been raised during the initial underlying motion). As a result, there was no clear error or manifest injustice in how the District Court held that McCray failed to factually plead a plausible cause of action initially and actually sought to raise a new theory of the case that could and should have been raised prior to the entry of judgment dismissing same.

The majority view adopted by most district courts, especially those in this Circuit, are that mortgage foreclosure may not be a debt collection activity, as it follows the premise that the enforcement of a security interest is distinct from the obligation to pay money. *See, Blagogee, supra*; *Rosado v. Taylor,* 324 F. Supp.2d 917, 924 (N.D.Ind. 2004) ("Security enforcement activities fall outside of the scope of the FDCPA, because they are not debt collection practices"); *Hulse v. Ocwen Fed Bank,* 195 F. Supp.2d 1188, 1204 (D.Or. 2002). Indeed, the condemnation of the collateral by a foreclosure sale has not even happened in the instant case. The SIWPC Appellees would acknowledge though, that if after the foreclosure proceeding has been *completed*, and the borrower's ownership interest in the property has been divested and the sale judicially ratified, if, subsequently, a money judgment is then sought *after a completion of the foreclosure proceeding*, then there might be a situation which arguably could amount to an attempt to collect money, but up to the point when the actual collection of money is sought, there has been no debt collection

activity undertaken. *See, F.D.I.C. v. Prince George Corp*., 58 F3d 1041, 1046 (4th Cir. 1995)("…the *lender* is entitled to *bring an action for a deficiency* judgment as a matter of course") (emphasis added,  citing *Perpetual Bldg. & Loan Ass'n of Anderson v. Braun,* 270 S.C. 338, 242 S.E.2d 407, 408 (1978)); *Piper v. Portnoff Law Assocs. Ltd*., 396 F3d. 227 (3d Cir 2005) (law firm made telephone calls and mailed correspondence demanding payment, "obtained a money judgment" and then enforced the lien by selling the home).  Up to the institution of the money collection activity, only a termination of McCray's property interests has occurred in rem (*i.e.* the real property), which was the collateral for the loan. In fact, it would be wrong to conclude that a Maryland quasi-judicial mortgage foreclosure's purpose is to obtain payment on an underlying debt, as the purpose of such an action is to terminate the ownership interests of the mortgagor in the property and to foreclose their right of redemption by the trustee's sale, so that the property can then be transferred free and clear of the mortgagor's interest by the secured party. Indeed, the power of sale is exercised by the secured party who directs the trustee to undertake the action to foreclose the borrower's right of possession in the collateral. *See, Simard v. White*, 383 Md. 257, 269, 859 A2d. 168, 175 (2004) (discussion of the history of Maryland foreclosures and the power of sale); *see also*, Richard M. Venable, *The Law of Real Property and Leasehold Estates in Maryland* 177 (1892). In Maryland, such an action (i.e. foreclosure proceeding) is not an action against the

mortgagor, as it is an in rem proceeding against the property for the divestiture of the mortgagor's interest. It is for the secured party to determine how and if the proceeds resulting from the condemnation of the property (assuming the sale is consummated and thereafter ratified by the state circuit court pursuant to Md. Rule of Civ. Procedure Rule 14-305(e)) are, if at all, applied to the obligation of the mortgagor. The trustee is a fiduciary having fiduciary obligations to the mortgagor, among others, who upon direction of the secured party as a result of a default under the security instrument is to condemn the obligor's ownership interest in the collateral only. They do not act in personam, but only in rem.

Indeed, based upon the facts pled, the SIWPC Appellees did not seek a money judgment on any unpaid debt against McCray, as the foreclosure sale has yet to occur. As such, these Appellees believe that this is the proper analysis that this Court should undertake instead of the abridged view the 6th Circuit Court of Appeals has undertaken. *See, Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013).

As McCray did not factually plead what, if any, activity constituted the demand for payment or the communication of a penalty for non-payment, the conclusory statement that the SIWPC Appellees are debt collectors was without any factual basis and the District Court was proper in holding that the decision of *Blagogee* was applicable to the factual allegations. Further, the Second Amended Complaint failed to plead a facially plausible claim against the SIWPC Appellees,

and, as such, it was impossible for the District Court to draw any reasonable inference that the SIWPC Appellees were liable for any misconduct alleged by McCray. *Iqbal,* 556 U.S. at 678-79 (2009) (citing *Twombly,* 550 U.S. 544, 556 (2007))(discussing the stand for adjudicating such motions). Thus, the decision of the District Court must be affirmed.

### 4.  The Alleged Violations Of The FDCPA Were Not Material And Are Thus Not Actionable

Even assuming *arguendo* that the SIWPC Appellees were deemed debt collectors for the purposes of the instant action, McCray has failed to assert what, if any, misrepresentations or misstatements were allegedly made and by whom in any of the three (3) complaints filed. Nowhere has McCray factually pled how she was at all misled or deceived, but relies solely upon the assertion that she never "received" the validation of the debt which she tries to imply and equate to some deceptive activity.  Her whole §1692g(b) assertion is merely that she did not receive a validation of her debt, despite having had it validated repeatedly before her request to the SIWPC Appellees by the secured party. *See*, Wells Fargo Letter of October 10, 2011 at J.A. 93-94; Wells Fargo's Letter of October 25, 2011 at J.A. 96; Wells Fargo's Letter of September 19, 2012 at J.A. 115-116; the Notice of Intent to Foreclose ("NOI") of October 2, 2012 at J.A. 173; Wells Fargo's Affidavit of Debt at J.A. 100-101, Wells Fargo's Affidavit of Ownership of Debt at J.A. 98, and the

21

Debt Validation letter of December 3, 2012 (the same she disputed the authenticity of with the District Court) at J.A.188. Furthermore, all of McCray's allegations are assertions for actions arising under §1692e and she failed to allege any separate facts that contend that SIWPC engaged in unfair, unauthorized or unconscionable practices under §1692f.[2] Thus the Court was proper in dismissing those claims.

Without such a factual pleading, the alleged SIWPC Appellees' actions furthermore do not meet the legal threshold FDCPA test requirements for "materiality," and the District Court was proper for dismissing the action.  *Smith v. Transworld Systems, Inc*., 953 F.2d 1025, 1028 (6th Cir. 1992) (it is for the Court to rule on the issue of whether the action of a debt collector is deceptive to the least sophisticated consumer as a matter of law).  A FDCPA claim that involves an allegation of a false representation, as in the instant case, the requirement is that the complaint "must contain sufficient factual matter, accepted as true," that the alleged false representations were material. *See*, *Iqbal*, 129 S.Ct. at 1949.  In determining whether a debt collector's act or communication constitutes a false, deceptive, or misleading practice under the FDCPA, a court must assess the impact that the act or communication would have on the least sophisticated debtor. *See, United States v.*

---

[22] The right to foreclose on the rem was validated by the United States Bankruptcy Court in McCray's Chapter 7 bankruptcy Adversary Action proceedings.  See Judge Alquist's holding in the entered Proposed Findings and Conclusions in Support of Dismissal of Amended Complaint, J.A.489-90

*National Financial Services, Inc*., 98 F.3d 131, 135–36 (4th Cir. 1996) (applying "least sophisticated debtor" standard to alleged violation of §1692e). Despite McCray contending that the SIWPC Appellees failed to validate the October 6, 2012 demand for debt validation (J.A. 21 ¶22 J.A. 70 ¶27, and J.A. 230 ¶32 ), the SIWPC Appellees, disputed same and claim to have provided a response to same on December 3, 2012, J.A. 188 (though the authenticity was objected to by McCray and thus was not considered by the District Court. See J.A. 316-318.[3] This fact alone is the sole basis for the § 1692g(b) claim against SIWPC.

Regardless, the contention of the validation of the debt is not material in light of the Court's finding that the information was previously provided to McCray by the other named Appellees on no less than three (3) separate occasions before the foreclosure was docketed and before McCray made her demand on the SIWPC Appellees for debt validation. The same validation was provided in the State Foreclosure Action's service of the Order to Docket (the Affidavit of Ownership of Debt Instrument (J.A. 98) and the Right to Foreclose (J.A.100-101) each signed by the secured party. Obviously, there was, and has been, no materially false, deceptive,

---

[3] It should be noted that while the mailing of the letter was disputed on the premise of the certified mail tracking numbers, it was claimed to have been sent both by certified mail and regular prepaid postage first class mail prior to undertaking any further action in the State Foreclosure Action. (See Circuit Court Docket of Foreclosure indicating the Order to Docket foreclosure was docketed on February 12, 2013 (J.A. 121-124) some two plus months after the debt validation letter (J.A. 188) was sent.

23

or misleading representations ever made to McCray in any correspondence or other representations which was in any way made to mislead McCray ever by any Appellee. Indeed, none was factually alleged or pled by McCray. Again, McCray's veracity must be considered relative to the various debt avoidance schemes she undertook during this period. See Wells Fargo Letter of September 19, 2012 (J.A. 115-116 and 424) and her Conditional Acceptance and release of debt (J.A.113).

Federal courts throughout the country have held that false but non-material representations that are not likely to mislead even the least sophisticated consumer are therefore are not actionable under 15 U.S.C. §§1692e or 1692f of the FDCPA. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) ("We agree with the approach adopted by the Sixth and Seventh Circuits. We have consistently held that whether conduct violates §§ 1692e or 1692f requires an objective analysis that considers whether the least sophisticated debtor would likely be misled by a communication. We now conclude that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f.") (citations and quotation marks omitted) (following *Hahn v. Triumph P'shtps LLC,* 557 F.3d 755 (7th Cir. 2009) and *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009) (materiality required to establish a FDCPA violation)). Indeed, the District Court considered this very aspect and found "McCray does not allege any facts indicating the SIWPC Defendants were

engaged in any attempt to collect her debt. She does not allege that SIWPC's notice letter contained any express demand for payment or specific information about her debt." J.A. 294.

The sole allegation, unsupported by any factual allegation, is that conclusory statement that "[D]efendants violated USC Title 15 §1692e(2)(A) by falsely representing the character, amount or legal status of the debt." J.A. 23 ¶38; J.A. 72 ¶44 ; J.A. 233 ¶55. Besides this conclusory allegation, nothing has been factually pled in the Complaint to substantiate same, and McCray failed to correct the deficiency despite the District Court advising her of this very aspect in the January 24, 2014 Memorandum Opinion dismissing her claim. See J.A. 294. The District Court thereafter refused to provide McCray with a "blueprint" so as to "engineer a winning argument" when she challenged the ruling on her Motion to Alter and Amend Judgment. See J.A. 318.

In *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009), Chief Judge Easterbrook concluded for a panel of the Seventh Circuit that a false statement is <u>not</u> actionable under § 1692e <u>unless</u> it is *material*. Chief Judge Easterbrook observed that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *Id*. 557 F.3d at 757 (citations ommitted). Accordingly, there is no "reason why materiality should not equally be required in an action based on § 1692e." *Hahn*, 557 F.3d at 757. The purpose of the FDCPA,

"to provide information that helps consumers to choose intelligently," would not be furthered by creating liability as to immaterial information because "by definition, immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Id*. at 757-58. The Seventh Circuit properly framed materiality as a corollary to the well-established proposition that "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act] – even if it is false in some technical sense." *Id*. at 758 (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (alterations in original)). Thus, "[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Hahn*, 557 F.3d at 758. The Sixth and Eleventh Circuits have reached the same conclusion. *See, Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Starosta v. MBNA America Bank, NA*., 244 Fed. Appx. 939, 2007 WL 2007944 (11th Cir. 2007) (debt collection firm's use of acronym "PA" not a violation, even when collection firm is not a professional services corporation because, among other reasons, its use cannot be said to have either misled, confused or deceived the Petitioner).

Accordingly, after reviewing the record before it, including McCray's Second Amended Complaint filed while the motions were pending, the District Court found that McCray had not alleged a viable FDCPA violation against the SIWPC Appellees, McCray failed to factually plead a plausible claim for which any

reasonable inferences could be drawn that the SIWPC Appellees should be liable for any misconduct, and this Court must affirm the decision of the District Court.

## II.    THE FREDDIE MAC AND WELLS FARGO APPELLEES

### A.    The District Court Committed No Error Dismissing McCray's 15 U.S.C. §1641(g) Claim Asserted Against Freddie Mac

McCray argues that the District Court erred in dismissing her TILA claim against Freddie Mac when it considered information contained in an October 25, 2011 letter from Wells Fargo that McCray admits she received, but which was not specifically identified in her Complaint.  This argument has no merit for multiple reasons.  To begin with, McCray fails to provide the necessary context to the District Court's consideration of the October 25, 2011 letter.  In her complaints, the one and only alleged assignment forming the basis of her TILA claim was the July 3, 2012 Corporate Assignment of Deed of Trust to Wells Fargo.  McCray alleged that "she was never notified of the July 3, 2012 assignment."  J.A. 21 ¶16, 27 ¶59, 69 ¶18, 76 ¶68, 229 ¶21, 235 ¶62.  Wells Fargo and Freddie Mac moved to dismiss all of McCray's claims, but also presented their motion in the alternative as a motion for summary judgment.  J.A. 81-116 and Supporting Memoranda, Doc. No. 8-1.  In the motion, Freddie Mac argued primarily that McCray had not alleged any sale, transfer or assignment of her loan to Freddie Mac after Congress amended TILA in 2009 to require notice under 15 U.S.C. §1641(g).  Supporting Memorandum, Doc. No. 8-1,

27

p. 16.  *See Helping Families Save Their Home Act of 2009,* Pub. L. No. 111-22, 123 Stat. 1632.  Because McCray had not alleged any facts to support a TILA claim against Freddie Mac, the District Court could have dismissed the claim on that basis alone.  However, in its motion, Freddie Mac pointed out, in any event, that McCray was advised of its involvement with her loan in correspondence to her from Wells Fargo dated October 25, 2011, if not earlier.[4]  J.A. 4-5, Doc. No. 8-1, p. 16.  Under 15 U.S.C. §1640(e) there is a one year statute of limitations for TILA violations. McCray did not file her lawsuit until May 23, 2013, well more than a year after she was advised of Freddie Mac's involvement with her loan.

McCray opposed both the motion to dismiss and motion for summary judgment and presented her own exhibits and evidence, including her sworn "Affidavit of Truth."  In her opposition, McCray admitted that she received the October 25, 2011 letter, and argued that the letter "confused [her] even more because this was the first mention that Freddie Mac was involved in some way with the Plaintiff's mortgage."  Doc. No. 22, p. 6.

After reviewing the record before it, including McCray's Second Amended Complaint filed while the motions were pending, the District Court found that McCray had not alleged a viable TILA claim against Freddie Mac because

---

[4] Freddie Mac attached a copy of the October 25, 2011 letter as an exhibit to its motion. J.A. 96.

28

"[n]owhere in her Complaint or subsequent briefings to the Court [did] McCray allege any sale, transfer, or assignment of her loan to Freddie Mac after Congress amended TILA to require notice." J.A. 299. Despite McCray's pleading failure, the District Court nevertheless noted that the October 25, 2011 letter was received by McCray after TILA was amended, leaving open the possibility of a TILA violation occurring after 2009. However, the District Court properly found that the window to file any claim "based on the one concrete allegation levied against [Freddie Mac], the October 25, 2011 letter" had lapsed well before McCray initiated the action.[5] J.A. 300.

In her Brief, McCray asserts that the District Court considered matters outside the pleadings "without allowing [her] to present information relevant to a motion for summary judgment." In essence, McCray is complaining that the District Court converted the motion to one for summary judgment without giving her a fair opportunity to oppose the motion with her own evidence. However, as noted above, this is not correct. McCray not only had the opportunity to oppose the motions with her own facts and evidence, she did in fact oppose the motion for summary judgment

---

[5] McCray does not argue that §1641(g) may be retroactively applied, and the courts which have considered the issue have overwhelmingly held that §1641(g) may not be retroactively applied. See *Talaie v. Wells Fargo Bank, N.A.*, --- F.3d ---, 2015 WL 8606014 (9th. Cir. Dec. 14, 2015); *Bradford v. HSBC Mortgage Corp.*, 829 F.Supp.2d 340, 353 (E.D. Va. 2011) and *Craig v. Bank of New York Mellon Corporation*, 2014 WL 1347225 at *10 (E.D.N.Y. Mar. 31, 2014).

with her own facts and evidence. As evidenced by her own actions and pleadings, McCray had actual notice that her claim could be dismissed based on the District Court taking notice of her receipt of the October 2011 letter, or that it might be similarly disposed as summary judgment *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 260-61 (4th Cir. 1998). Although the District Court stated in its Memorandum Opinion that it was not necessary to convert the motions to ones for summary judgment, to the extent McCray implies there was a de facto conversion of the motions to summary judgment when the District Court considered the October 21, 2011 letter, the District Court would not have erred in doing so. *Id.* [6]

Furthermore, in opposing the motions McCray argued that the October 2011 notification of Freddie Mac's involvement supported her case because it confused her rather than answering the questions she had put to Wells Fargo. After relying on the content of the letter to oppose the motions, it is disingenuous for McCray to now argue that the letter was not integral to her complaints. Moreover, regardless

---

[6] When a movant alternatively captions its motion as one for summary judgment, the parties are deemed to be on notice that a conversion may occur and the Court does not have an obligation to notify the parties of the obvious. *Laughlin*, 149 F.3d at 261. *See also, Ngatia v. Department of Public Safety & Correctional Services*, 2015 WL 996585 at *6 (D. Md. Mar. 4, 2015). In this case, McCray understood the motions were presented in the alternative and presented her response as an opposition to both the motion to dismiss and motion for summary judgment.

of whether the letter was integral to her complaints or not, McCray was on notice, by the alternative presentation of the motion as one for summary judgment, that the District Court may consider the evidence. Importantly, McCray did not dispute the authenticity and receipt of the letter and has never subsequently disputed the authenticity or receipt of the letter. Likewise, McCray did not argue, and does not argue now, that she needed discovery with respect to the October 25, 2011 letter and the disposition of her TILA claim. Thus, the usual concerns with regard to converting a motion to dismiss into a summary judgment motion, such as lack of notice that evidence may be considered or challenged authenticity, are not present in this case. *See, Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F2d 42, 47-48 (2d Cir. 1991); *see also*, *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 625 (4th Cir. 2008).

It is also important to note that when opposing Freddie Mac's motion for summary judgment, McCray not only admitted receipt of the October 25, 2011 letter, but she also admitted receiving additional correspondence more than a year prior to filing her lawsuit, in which she was again notified of Freddie Mac's involvement with her loan. For example, in her Affidavit of Truth, submitted to oppose the motions, McCray admitted receiving on December 2, 2011 correspondence from

31

Wells Fargo, dated November 22, 2011. J.A. 208, ¶16. McCray noted in her Affidavit of Truth that in this correspondence she was advised the "investor/note holder for this loan is Federal Home Loan Mortgage Corporation..." J.A. 208, ¶16. See also J.A. 412. Similarly, in her Affidavit of Truth, McCray admitted receiving on December 20, 2011 correspondence which was dated December 15, 2011 from Wells Fargo (Ben Holtrop). J.A. 209, ¶24. The December 15, 2011 letter again referenced Freddie Mac. J.A. 414-415. In her Affidavit of Truth, McCray also admitted receiving correspondence dated January 10, 2012 from Wells Fargo (Kristopher Peterson). J.A. 210, ¶30. In that correspondence, McCray was advised that the loan was sold on the secondary market to Freddie Mac on November 14, 2005.[7] J.A. 417. Clearly, by McCray's repeated admissions, it is undisputed that she had been notified of Freddie Mac's involvement with her loan more than a year prior to the filing of her Complaint.[8]

_____

[7] Although copies of the December 20, 2011 and January 10, 2012 letters were not before the District Court at the time it granted the motion to dismiss the TILA claim, they are properly part of the record of this case which this Court may consider if it were to conduct a de novo review of the evidence. Wells Fargo attached copies of the correspondence to its later filed Motion for Summary Judgment with respect to McCray's RESPA claim, which survived the initial motions. As noted, McCray admitted to receiving the correspondence in her Affidavit of Truth. She has never disputed that the copies attached to Wells Fargo's later filed Motion for Summary Judgment are true, accurate, and authentic copies of the correspondence.

[8] As noted, it is illogical for McCray to argue that the District Court erred in not giving her time to present information, when she did in fact present her own information to oppose the motions. Nevertheless, she does not identify or even

32

The District Court did not err, under these circumstances, in taking notice of the October 25, 2011 letter without formally converting the motion to a motion for summary judgment. However, to the extent McCray may argue that the District Court should have analyzed the statute of limitations issue under summary judgment standards, the result would have been the same.[9]  This Court reviews an award of summary judgment de novo. *F.D.I.C. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013) (citing *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 556 (4th Cir. 2011)). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *Cashion*, 720 F.3d at 173.

Likewise, had the District Court "limited itself to the pleadings" and initially denied the motion to dismiss, as McCray now advocates, this would merely have prolonged the litigation until summary judgment was granted on the same undisputed facts.  In short, it would be futile to remand the issue to the District Court for any reason, thus dismissal should be affirmed.  *See generally, Perkins v. United States*, 55 F.3d 910 (4th Cir. 1995).

---

allude to the type of different or additional information, relevant to the TILA limitations issue, she would have submitted, or would in the future submit to the District Court, if given the opportunity.

[9] Thus, to the extent that it can be argued that the District Court erred in not formally declaring a conversion of the motion to summary judgment, the error was harmless.

For all of the reasons above, the District Court did not err in dismissing McCray's TILA claim against Freddie Mac on the basis that it was not timely asserted.

## B. The District Court Committed No Error Dismissing McCray's 15 U.S.C. §1641(g) Claim Asserted Against Wells Fargo

McCray argues that the District Court should have "liberally construed" her Complaint to have alleged a 15 U.S.C. §1641(g) violation against Wells Fargo. Specifically, McCray asserts that the Corporate Assignment of Deed of Trust given by Mortgage Electronic Registration Systems, Inc. (MERS) to Wells Fargo on July 3, 2012, could at the pleading stage, support an inference that the underlying debt was also transferred to Wells Fargo, thus triggering the notice requirement. However, the problem with McCray's argument is that in order to be actionable, there had to be a transfer of the underlying debt some time subsequent to when Congress amended TILA in 2009 to add the notice requirement, and the claim had to be timely asserted and not barred by TILA's one year statute of limitations.

As a starting point, it is important to note that in her complaints McCray alleged that she was not notified of the July 3, 2012 assignment of the Deed of Trust. The allege failure to provide notice of the July 3, 2012 assignment was in fact the main focus of her §1641(g) claim in her complaints and pleading. It appears that McCray now concedes the correctness of the District Court's ruling that an

34

assignment by MERS of only the deed of trust does not implicate 15 U.S.C.§1641(g). This is because MERS was never the holder of the underlying debt obligation and therefore its assignment of the Deed of Trust to Wells Fargo could not have transferred legal title to the debt. *Terry v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 1832376 *2 (D. Md. April 30, 2013) (citing *Deutche Bank National Trust Company v. Brock*, 430 Md. 714, 63 A.3d 40 (2013)). *See also, Maddox v. Wells Fargo Bank, N.A.*, 2015 WL 4069464 (D. Md. July 2, 2015); *Barr v. Flagstaff*, 2014 WL 4660799 (D. Md. Sept. 17, 2014) and *Connell v. Citimortgage, Inc.*, 2012 WL 5511087 (S.D. Ala. Nov. 13, 2012).

If the assignment of the deed of trust did not trigger the notice requirements of §1641(g), then McCray has no viable claim against Wells Fargo. Her complaints are devoid of any allegation of any other transfer that may be actionable.[10] Moreover, McCray alleged in her complaints that Wells Fargo was the servicer of

---

[10] To the contrary, as noted by the District Court, to pursue her FDCPA claims, McCray took the position that neither Wells Fargo nor Freddie Mac had established any ownership interest in her loan, and that except for the July 3, 2012 assignment of the Deed of Trust, there was no record of her loan ever being sold, assigned or transferred. Nevertheless, to support their motions to dismiss or in the alternative summary judgment, Wells Fargo and Freddie Mac attached court filings from the foreclosure action pending in the Circuit Court for Baltimore City, including an Affidavit Certifying Ownership, that established that Freddie Mac is the owner of the loan evidenced by the note and that Freddie Mac had authorized Wells Fargo, as the servicer of the loan, to be the holder of the note for the purposes of the foreclosure action. Thus, McCray is not correct when she argues in her brief that "there were no documents before the district court identifying the owner of McCray's promissory note."

her loan, and had been the servicer of her loan since at least June of 2011 when she directed her "Qualified Written Request."   J.A. 20 at ¶13, 32 at ¶8, 68 at ¶13, 88, 207 at ¶8, and 229 at ¶16.  However, as noted above, she did not file her lawsuit until May of 2013, well more than a year after she knew of Wells Fargo's involvement as the servicer of her loan.  Thus, to the extent McCray's Complaint could be read to assert a claim  against Wells Fargo under §1641(g), separate and apart from one based on the July 2012 assignment of the deed of trust, any such claim is time barred.

## CONCLUSION

The rulings of the District Court disposing of McCray's claims in the case should not be reversed, but should be affirmed.


/s/ Michael S. Barranco                            /s/ Robert H. Hillman
Michael S. Barranco                                Robert H. Hillman
Treanor Pope & Hughes, P.A.                        Samuel I. White, PC
500 York Road                                      611 Rockville Pike Suite 100
Towson, Maryland  21204                            Rockville Maryland 20852-1178
Tel: (410) 494-7777                                Tel: (301)804-3385
Fax: (410) 494-1658                                Fax: (301)838)-1954
msbarranco@tph-law.com                             rhillman@siwpc.com

Attorneys for Appellees,                           Attorneys for Appellees,
Wells Fargo Bank, N.A.                             Samuel I. White P.C. and the individually
and Federal Home Loan Mortgage                     named Substitute Trustees
Corporation

§ 1640. Civil liability, 15 USCA § 1640

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 41. Consumer Credit Protection (Refs & Annos)
      Subchapter I. Consumer Credit Cost Disclosure (Refs & Annos)
        Part B. Credit Transactions (Refs & Annos)

15 U.S.C.A. § 1640

§ 1640. Civil liability

Currentness

(a) Individual or class action for damages; amount of award; factors determining amount of award

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

(1) any actual damage sustained by such person as a result of the failure;

(2)(A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000, (iii) in the case of an individual action relating to an open end consumer credit plan that is not secured by real property or a dwelling, twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures;[1] or (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $1,000,000 or 1 per centum of the net worth of the creditor;

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court; and

§ 1640. Civil liability, 15 USCA § 1640

**(4)** in the case of a failure to comply with any requirement under section 1639 of this title, paragraph (1) or (2) of section 1639b(c) of this title, or section 1639c(a) of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. In connection with the disclosures referred to in subsections (a) and (b) of section 1637 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635, 1637(a)² of this title, or any of paragraphs (4) through (13) of section 1637(b) of this title, or for failing to comply with disclosure requirements under State law for any term or item that the Bureau has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms or items referred to in section 1637(a) of this title, or any of paragraphs (4) through (13) of section 1637(b) of this title. In connection with the disclosures referred to in subsection (c) or (d) of section 1637 of this title, a card issuer shall have a liability under this section only to a cardholder who pays a fee described in section 1637(c)(1)(A)(ii)(I) or section 1637(c)(4)(A)(i) of this title or who uses the credit card or charge card. In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title, of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or section 1638(b)(2)(C)(ii) of this title, of subparagraphs (A), (B), (D), (F), or (J) of section 1638(e)(2) of this title (for purposes of paragraph (2) or (4) of section 1638(e) of this title), or paragraph (4)(C), (6), (7), or (8) of section 1638(e) of this title, or for failing to comply with disclosure requirements under State law for any term which the Bureau has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms referred to in any of those paragraphs of section 1638(a) of this title or section 1638(b)(2)(C)(ii) of this title. With respect to any failure to make disclosures required under this part or part D or E of this subchapter, liability shall be imposed only upon the creditor required to make disclosure, except as provided in section 1641 of this title.

(b) Correction of errors

A creditor or assignee has no liability under this section or section 1607 of this title or section 1611 of this title for any failure to comply with any requirement imposed under this part or part E of this subchapter, if within sixty days after discovering an error, whether pursuant to a final written examination report or notice issued under section 1607(e)(1) of this title or through the creditor's or assignee's own procedures, and prior to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower.

(c) Unintentional violations; bona fide errors

A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

§ 1640. Civil liability, 15 USCA § 1640

(d) Liability in transaction or lease involving multiple obligors

When there are multiple obligors in a consumer credit transaction or consumer lease, there shall be no more than one recovery of damages under subsection (a)(2) of this section for a violation of this subchapter.

(e) Jurisdiction of courts; limitations on actions; State attorney general enforcement

Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a) of this title), 1 year from the date on which the first regular payment of principal is due under the loan. Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of section 1639, 1639b, 1639c, 1639d, 1639e, 1639f, 1639g, or 1639h of this title may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs. The State attorney general shall provide prior written notice of any such civil action to the Federal agency responsible for enforcement under section 1607 of this title and shall provide the agency with a copy of the complaint. If prior notice is not feasible, the State attorney general shall provide notice to such agency immediately upon instituting the action. The Federal agency may--

(1) intervene in the action;

(2) upon intervening--

(A) remove the action to the appropriate United States district court, if it was not originally brought there; and

(B) be heard on all matters arising in the action; and

(3) file a petition for appeal.

(f) Good faith compliance with rule, regulation, or interpretation of Bureau or with interpretation or approval of duly authorized official or employee of Federal Reserve System

No provision of this section, section 1607(b) of this title, section 1607(c) of this title, section 1607(e) of this title, or section

§ 1640. Civil liability, 15 USCA § 1640

1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Bureau or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Bureau to issue such interpretations or approvals under such procedures as the Bureau may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

(g) Recovery for multiple failures to disclose

The multiple failure to disclose to any person any information required under this part or part D or E of this subchapter to be disclosed in connection with a single account under an open end consumer credit plan, other single consumer credit sale, consumer loan, consumer lease, or other extension of consumer credit, shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries. This subsection does not bar any remedy permitted by section 1635 of this title.

(h) Offset from amount owed to creditor or assignee; rights of defaulting consumer

A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person under subsection (a)(2) of this section against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this subchapter.

(i) Class action moratorium

(1) In general

During the period beginning on May 18, 1995, and ending on October 1, 1995, no court may enter any order certifying any class in any action under this subchapter--

(A) which is brought in connection with any credit transaction not under an open end credit plan which is secured by a first lien on real property or a dwelling and constitutes a refinancing or consolidation of an existing extension of credit; and

(B) which is based on the alleged failure of a creditor--

(i) to include a charge actually incurred (in connection with the transaction) in the finance charge disclosed pursuant

§ 1640. Civil liability, 15 USCA § 1640

to section 1638 of this title;

**(ii)** to properly make any other disclosure required under section 1638 of this title as a result of the failure described in clause (i); or

**(iii)** to provide proper notice of rescission rights under section 1635(a) of this title due to the selection by the creditor of the incorrect form from among the model forms prescribed by the Bureau or from among forms based on such model forms.

(2) Exceptions for certain alleged violations

Paragraph (1) shall not apply with respect to any action--

**(A)** described in clause (i) or (ii) of paragraph (1)(B), if the amount disclosed as the finance charge results in an annual percentage rate that exceeds the tolerance provided in section 1606(c) of this title; or

**(B)** described in paragraph (1)(B)(iii), if--

**(i)** no notice relating to rescission rights under section 1635(a) of this title was provided in any form; or

**(ii)** proper notice was not provided for any reason other than the reason described in such paragraph.

(j) Private educational lender

A private educational lender (as that term is defined in section 1650(a) of this title) has no liability under this section for failure to comply with section 1638(e)(3) of this title).[3]

(k) Defense to foreclosure

(1) In general

Notwithstanding any other provision of law, when a creditor, assignee, or other holder of a residential mortgage loan or anyone acting on behalf of such creditor, assignee, or holder, initiates a judicial or nonjudicial foreclosure of the residential

§ 1640. Civil liability, 15 USCA § 1640

mortgage loan, or any other action to collect the debt in connection with such loan, a consumer may assert a violation by a creditor of paragraph (1) or (2) of section 1639b(c) of this title, or of section 1639c(a) of this title, as a matter of defense by recoupment or set off without regard for the time limit on a private action for damages under subsection (e).

(2) Amount of recoupment or setoff

(A) In general

The amount of recoupment or set-off under paragraph (1) shall equal the amount to which the consumer would be entitled under subsection (a) for damages for a valid claim brought in an original action against the creditor, plus the costs to the consumer of the action, including a reasonable attorney's fee.

(B) Special rule

Where such judgment is rendered after the expiration of the applicable time limit on a private action for damages under subsection (e), the amount of recoupment or set-off under paragraph (1) derived from damages under subsection (a)(4) shall not exceed the amount to which the consumer would have been entitled under subsection (a)(4) for damages computed up to the day preceding the expiration of the applicable time limit.

(l) Exemption from liability and rescission in case of borrower fraud or deception

In addition to any other remedy available by law or contract, no creditor or assignee shall be liable to an obligor under this section, if such obligor, or co-obligor has been convicted of obtaining by actual fraud such residential mortgage loan.

## CREDIT(S)

(Pub.L. 90-321, Title I, § 130, May 29, 1968, 82 Stat. 157; Pub.L. 93-495, Title IV, §§ 406, 407, 408(a) to (d), Oct. 28, 1974, 88 Stat. 1518; Pub.L. 94-222, § 3(b), Feb. 27, 1976, 90 Stat. 197; Pub.L. 94-240, § 4, Mar. 23, 1976, 90 Stat. 260; Pub.L. 96-221, Title VI, § 615, Mar. 31, 1980, 94 Stat. 180; Pub.L. 100-583, § 3, Nov. 3, 1988, 102 Stat. 2966; Pub.L. 103-325, Title I, § 153(a), (b), Sept. 23, 1994, 108 Stat. 2195; Pub.L. 104-12, § 2, May 18, 1995, 109 Stat. 161; Pub.L. 104-29, § 6, Sept. 30, 1995, 109 Stat. 274; Pub.L. 110-289, Div. B, Title V, § 2502(b), July 30, 2008, 122 Stat. 2857; Pub.L. 110-315, Title X, § 1012(a), Aug. 14, 2008, 122 Stat. 3483; Pub.L. 111-22, Div. A, Title IV, § 404(b), May 20, 2009, 123 Stat. 1658; Pub.L. 111-24, Title I, § 107, Title II, § 201(b), May 22, 2009, 123 Stat. 1743, 1745; Pub.L. 111-203, Title X, § 1100A(2), Title XIV, §§ 1413, 1416, 1417, 1422, July 21, 2010, 124 Stat. 2107, 2148, 2153, 2157.)

Notes of Decisions (1679)

Footnotes

1
        So in original. The semicolon probably should be a comma.

§ 1640. Civil liability, 15 USCA § 1640

2

So in original. Probably should be preceded by "section".

3

So in original. The closing parenthesis probably should not appear.

15 U.S.C.A. § 1640, 15 USCA § 1640
Current through P.L. 114-93 (excluding P.L. 114-74 and 114-92) approved 11-25-2015.

End of Document                                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

§ 1641. Liability of assignees, 15 USCA § 1641

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
Title 15. Commerce and Trade
Chapter 41. Consumer Credit Protection (Refs & Annos)
Subchapter I. Consumer Credit Cost Disclosure (Refs & Annos)
Part B. Credit Transactions (Refs & Annos)

15 U.S.C.A. § 1641

§ 1641. Liability of assignees

Effective: July 21, 2011

Currentness

(a) Prerequisites

Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

(b) Proof of compliance with statutory provisions

Except as provided in section 1635(c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgement of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and, except as provided in subsection (a) of this section, of compliance with this part. This section does not affect the rights of the obligor in any action against the original creditor.

(c) Right of rescission by consumer unaffected

Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

(d) Rights upon assignment of certain mortgages

§ 1641. Liability of assignees, 15 USCA § 1641

(1) In general

Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title. The preceding sentence does not affect rights of a consumer under subsection (a), (b), or (c) of this section or any other provision of this subchapter.

(2) Limitation on damages

Notwithstanding any other provision of law, relief provided as a result of any action made permissible by paragraph (1) may not exceed--

**(A)** with respect to actions based upon a violation of this subchapter, the amount specified in section 1640 of this title; and

**(B)** with respect to all other causes of action, the sum of--

**(i)** the amount of all remaining indebtedness; and

**(ii)** the total amount paid by the consumer in connection with the transaction.

(3) Offset

The amount of damages that may be awarded under paragraph (2)(B) shall be reduced by the amount of any damages awarded under paragraph (2)(A).

(4) Notice

Any person who sells or otherwise assigns a mortgage referred to in section 1602(aa) of this title shall include a prominent notice of the potential liability under this subsection as determined by the Bureau.

§ 1641. Liability of assignees, 15 USCA § 1641

(e) Liability of assignee for consumer credit transactions secured by real property

(1) In general

Except as otherwise specifically provided in this subchapter, any civil action against a creditor for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if--

(A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and

(B) the assignment to the assignee was voluntary.

(2) Violation apparent on the face of the disclosure described

For the purpose of this section, a violation is apparent on the face of the disclosure statement if--

(A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or

(B) the disclosure statement does not use the terms or format required to be used by this subchapter.

(f) Treatment of servicer

(1) In general

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

(2) Servicer not treated as owner on basis of assignment for administrative convenience

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by

§ 1641. Liability of assignees, 15 USCA § 1641

the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

(3) "Servicer" defined

For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2) of Title 12.

(4) Applicability

This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

(g) Notice of new creditor

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--

   (A) the identity, address, telephone number of the new creditor;

   (B) the date of transfer;

   (C) how to reach an agent or party having authority to act on behalf of the new creditor;

   (D) the location of the place where transfer of ownership of the debt is recorded; and

   (E) any other relevant information regarding the new creditor.

(2) Definition

**§ 1641. Liability of assignees, 15 USCA § 1641**

As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

**CREDIT(S)**

(Pub.L. 90-321, Title I, § 131, May 29, 1968, 82 Stat. 157; Pub.L. 96-221, Title VI, § 616(a), Mar. 31, 1980, 94 Stat. 182; Pub.L. 103-325, Title I, § 153(c), Sept. 23, 1994, 108 Stat. 2195; Pub.L. 104-29, § 7, Sept. 30, 1995, 109 Stat. 274; Pub.L. 111-22, Title IV, § 404(a), May 20, 2009, 123 Stat. 1658; Pub.L. 111-203, Title X, § 1100A(2), July 21, 2010, 124 Stat. 2107.)

Notes of Decisions (111)

15 U.S.C.A. § 1641, 15 USCA § 1641
Current through P.L. 114-93 (excluding P.L. 114-74 and 114-92) approved 11-25-2015.

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

§ 1692a. Definitions, 15 USCA § 1692a

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 41. Consumer Credit Protection (Refs & Annos)
      Subchapter V. Debt Collection Practices (Refs & Annos)

15 U.S.C.A. § 1692a

§ 1692a. Definitions

Effective: July 21, 2011

Currentness

As used in this subchapter--

**(1)** The term "Bureau" means the Bureau of Consumer Financial Protection.

**(2)** The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

**(3)** The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

**(4)** The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

**(5)** The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

**(6)** The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

The term does not include--

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(7) The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

## CREDIT(S)

(Pub.L. 90-321, Title VIII, § 803, as added Pub.L. 95-109, Sept. 20, 1977, 91 Stat. 875; amended Pub.L. 99-361, July 9, 1986, 100 Stat. 768; Pub.L. 111-203, Title X, § 1089(2), July 21, 2010, 124 Stat. 2092.)

§ 1692e. False or misleading representations, 15 USCA § 1692e

KeyCite Red Flag - Severe Negative Treatment

Unconstitutional or Preempted Recognized as Repealed by Implication Townsend v. Quantum3 Group, LLC, M.D.Fla., July 29, 2015

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 41. Consumer Credit Protection (Refs & Annos)
      Subchapter V. Debt Collection Practices (Refs & Annos)

15 U.S.C.A. § 1692e

§ 1692e. False or misleading representations

Effective: September 30, 1996

Currentness

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)** The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

**(2)** The false representation of--

**(A)** the character, amount, or legal status of any debt; or

**(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

**(3)** The false representation or implication that any individual is an attorney or that any communication is from an attorney.

**(4)** The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

**(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.

**§ 1692e. False or misleading representations, 15 USCA § 1692e**

**(6)** The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to--

**(A)** lose any claim or defense to payment of the debt; or

**(B)** become subject to any practice prohibited by this subchapter.

**(7)** The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

**(8)** Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

**(9)** The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

**(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

**(11)** The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

**(12)** The false representation or implication that accounts have been turned over to innocent purchasers for value.

**(13)** The false representation or implication that documents are legal process.

**(14)** The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

**(15)** The false representation or implication that documents are not legal process forms or do not require action by the

### § 1692e. False or misleading representations, 15 USCA § 1692e

consumer.

**(16)** The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

**CREDIT(S)**

(Pub.L. 90-321, Title VIII, § 807, as added Pub.L. 95-109, Sept. 20, 1977, 91 Stat. 877; amended Pub.L. 104-208, Title II, § 2305(a), Sept. 30, 1996, 110 Stat. 3009-425.)

Notes of Decisions (785)

15 U.S.C.A. § 1692e, 15 USCA § 1692e
Current through P.L. 114-93 (excluding P.L. 114-74 and 114-92) approved 11-25-2015.

**End of Document**                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

§ 1692f. Unfair practices, 15 USCA § 1692f

KeyCite Red Flag - Severe Negative Treatment
Unconstitutional or Preempted**Recognized as Repealed by Implication** Townsend v. Quantum3 Group, LLC, M.D.Fla., July 29, 2015

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 41. Consumer Credit Protection (Refs & Annos)
      Subchapter V. Debt Collection Practices (Refs & Annos)

15 U.S.C.A. § 1692f

§ 1692f. Unfair practices

Currentness

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**(2)** The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

**(3)** The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

**(4)** Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

**(5)** Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

**(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;

§ 1692f. Unfair practices, 15 USCA § 1692f

**(B)** there is no present intention to take possession of the property; or

**(C)** the property is exempt by law from such dispossession or disablement.

**(7)** Communicating with a consumer regarding a debt by post card.

**(8)** Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

## CREDIT(S)

(Pub.L. 90-321, Title VIII, § 808, as added Pub.L. 95-109, Sept. 20, 1977, 91 Stat. 879.)

Notes of Decisions (271)

15 U.S.C.A. § 1692f, 15 USCA § 1692f
Current through P.L. 114-93 (excluding P.L. 114-74 and 114-92) approved 11-25-2015.

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e)

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) because it contains 9,212 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Michael S. Barranco

Attorneys for Appellees,
Wells Fargo Bank, N.A. and Federal Home Loan Mortgage Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 4, 2016, a copy of Appellees' Joint Brief was served via CM/ECF upon:

Kenzie M. Rakes, Esquire
2840 Plaza Place, Suite 360
Raleigh, NC 27612

Robert H. Hillman
Samuel I. White, PC
611 Rockville Pike Suite 100
Rockville Maryland 20852-1178

/s/ Michael S. Barranco